1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RACHEL DARCH,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C24-5192-SKV

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her applications for Disabled Adult Child Benefits and Supplemental Security Income (SSI).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 2001 and has a high school education.  AR 241.  She worked at a McDonalds for about a month total in January/February 2019.  AR 46, 241, 290-91.

On March 11, 2020, Plaintiff protectively applied for benefits, alleging disability as of February 27, 2019.  AR 217-24.  Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  After conducting a hearing on February 9, 2023, AR 42-72, the ALJ issued a decision finding Plaintiff not disabled.  AR 17-35.

/ / /

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the February 27, 2019 alleged onset date.

**Step two**:  Plaintiff has the following severe impairments:  anxiety, depression, psychogenic seizures, conversion disorder, and obesity.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  Plaintiff can perform a full range of work at all exertional levels.  She has the following nonexertional limitations:  never work at unprotected heights, with moving mechanical parts, or operate a motor vehicle; able to occasionally tolerate extreme cold and must not work near open water or open flames; able to understand, remember, and carry out detailed but not complex tasks; must have less than occasional interaction with co-workers and general public, as well as occasional interaction with supervisors after learning the job, and must not be required to work as part of a team.

**Step four**:  Plaintiff has no past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 17-25.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.  The parties consented to proceed before the undersigned Magistrate Judge.  Dkt. 2.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

1    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

2    2005). As a general principle, an ALJ's error may be deemed harmless where it is

3    "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104,

4    1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to

5    determine whether the error alters the outcome of the case." *Id*.

6         Substantial evidence is "more than a mere scintilla. It means - and means only - such

7    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8    *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

9    747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving

10   conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v.*

11   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record

12   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

13   Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

14   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

15   must be upheld. *Id.*

16                                    **DISCUSSION**

17        Plaintiff argues the ALJ erred in evaluating medical opinions and lay testimony, resulting

18   in harmful error necessitating remand. The Commissioner argues the ALJ's decision is free of

19   harmful legal error, supported by substantial evidence, and should be affirmed.

20   **A.       The ALJ Did Not Err in Evaluating Medical Opinions**

21        Under regulations applicable to this case, the ALJ is required to articulate the

22   persuasiveness of each medical opinion, specifically with respect to whether the opinions are

23   supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The

1   "supportability" factor addresses the relevance of the objective evidence presented in support of

2   an opinion, as well as the "supporting explanations" provided by the medical source.  20 C.F.R.

3   §§ 404.1520c(c)(1), 416.920c(c)(1).  The "consistency" factor examines the consistency of the

4   opinion with evidence from other medical and nonmedical sources.  20 C.F.R. §§

5   404.1520c(c)(2), 416.920c(c)(2).  The more consistent an opinion is with that other evidence, the

6   more persuasive it will be.  *Id.*  An ALJ's consistency and supportability findings must be

7   supported by substantial evidence.  *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

8      Plaintiff argues the ALJ erred in evaluating the opinions of consultative psychological

9   examiner Melinda Losee, Ph.D., psychological consultants William Wilkinson, Ed.D. and Renee

10   Eisenhauer, Ph.D., treating provider Valerie Armstrong, M.D., Nathan Todd, LMHCA, and the

11   prior administrative findings of psychological consultants Gary L. Nelson, Ph.D. and Carol

12   Mohney, Ph.D.  The Court addresses these arguments in turn.

13      1.   Dr. Melinda Losee:

14      Dr. Losee evaluated Plaintiff on September 22, 2020, AR 511-14, and December 31,

15   2021, AR 699-703.  She diagnosed conversion disorder, persistent depressive disorder, and panic

16   disorder, AR 514, 703, and, in the second evaluation, omitted a prior diagnosis of post-traumatic

17   stress disorder (PTSD), finding Plaintiff no longer met the criteria, and altered a prior "rule out"

18   diagnosis to a diagnosis of a specific learning disorder with impairment in mathematics.  *Id.*  In

19   both evaluations, Dr. Losee found Plaintiff capable of making simple work-related decisions,

20   cognitively capable of adapting to changes in a work setting, but would have difficulty tolerating

21   the stress of work, that her social anxiety would make her extra sensitive to perceived

22   corrections/criticism by supervisors, and that she was "capable of interacting appropriately with

23   co-workers and the public, but with anxiety." *Id.*

1      Dr. Losee's 2020 and 2021 opinions differed in two respects.  In 2020, Dr. Losee stated

2   that, based on observations during the assessment, Plaintiff's attention and concentration did not

3   appear significantly impaired, and she found Plaintiff able to understand, remember, and carry

4   out simple and detailed instructions on a sustained basis.  AR 514.  In 2021, Dr. Losee

5   administered the Wechsler Adult Intelligence Scale (WAIS), and stated that, based on the results

6   of cognitive testing, Plaintiff's attention and concentration were significantly impaired, which

7   "can affect her ability to attend to, remember, and carry out instructions on a sustained basis."

8   AR 703.  Dr. Losee also, in 2021, opined Plaintiff would experience anxiety working in crowded

9   environments.  *Id*.

10      The ALJ agreed with Dr. Losee's opinion that Plaintiff would have anxiety working in

11   crowded environments, and found the bulk of the 2020 opinion persuasive.  AR 31.  The ALJ

12   found the 2021 opinion regarding attention and concentration unsupported and inconsistent with

13   the record as a whole.  *Id*.  The ALJ also found insufficient support on examination or in the

14   record for the opinion Plaintiff was "extra sensitive or would otherwise be unable to tolerate"

15   occasional interaction with supervisors.  AR 31.

16      Plaintiff identifies error in the ALJ's apparent rejection of Dr. Losee's opinion regarding

17   stress, asserting his failure to explain that rejection or include stress-related limitations in the

18   RFC.  She also asserts that the ALJ erred in rejecting the 2021 opinion based on cognitive testing

19   by merely stating that the opinion was not fully supported by the evaluation or consistent with

20   the record as a whole.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ

21   must do more than offer his conclusions. He must set forth his own interpretations and explain

22   why they, rather than the doctors', are correct.")  Plaintiff asserts that Dr. Losee's interview,

23   mental status examination, and cognitive testing showing severe impairment in her working

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 5

memory and processing speed, *see* AR 703 (noting Plaintiff tested in the second percentile for

each), supports Dr. Losee's opinion of a significant impairment, affecting her ability to attend to,

remember, and carry out instructions on a sustained basis, a limitation to simple work-related

decisions, and difficulty tolerating stress.  She asserts error in the ALJ's focus on the complexity

of the tasks she could perform, as opposed to her ability to sustain focus over the course of a

workday.[3]

Contrary to Plaintiff's contention, the ALJ did not simply offer a conclusion

unaccompanied by an explanation in assessing the portion of Dr. Losee's opinion based on

cognitive testing.  The ALJ, as an initial matter, explained his conclusion that Plaintiff could

perform detailed, but noncomplex tasks as based on consideration of her reports she played video

games, watched movies and television, created an online dating profile, and Facetimed daily with

her boyfriend; the fact that, while she scored in the borderline range on formal testing in 2021,

her verbal skills tested in the average range; and that she showed no significant impairment in

memory, concentration, or persistence in either of Dr. Losee's evaluations.  AR 28 (also finding

insufficient evidence to support Plaintiff's assertions she needed a break after five minutes of

performing hobbies because she became frustrated or discouraged, and could not even fold her

own laundry because it was overwhelming and painful).

The ALJ also provided a detailed explanation of his conclusions regarding Dr. Losee's

opinions.  The ALJ noted that Dr. Losee did not detect any impairment in concentration in 2020

or during the 2021 interview, and stated that, while Plaintiff performed essentially the same at

both evaluations, Dr. Losee simply asserted Plaintiff's concentration during formal testing was

---

[3] Plaintiff does not challenge the ALJ's findings regarding social anxiety due to the RFC limitation to less than occasional interaction with the public, supervisors, and co-workers, and the identification of jobs at step five that did not require a great deal of social interaction.

1   impaired.  AR 30.  Further, Dr. Losee did not quantify Plaintiff's "significantly impaired"

2   attention and concentration or how the impairments "'could'" affect her ability to attend to,

3   remember, and carry out instructions on a sustained basis, or even state with any certainty that

4   her ability to understand, remember, and apply information was, in fact, impaired.  *Id*.  Dr. Losee

5   also noted Plaintiff was persistent during the exam and did not mention her pace.  *Id*.

6           Given Dr. Losee's finding of impaired attention and concentration during the formal

7   testing and the borderline scores, the ALJ found it reasonable to assess a moderate limitation in

8   this domain and to limit Plaintiff to detailed tasks, but found the assertion of significant

9   impairment not fully supported or consistent with the record as a whole.  AR 30-31.  The ALJ

10  noted that Plaintiff's attention and concentration had been consistently judged to be at least fair

11  on clinical exams, that her evaluating and treating clinicians did not report she had limitations in

12  persistence or pace, AR 31 (citing AR 448, 513, 701, 982), and that she consistently

13  demonstrated intact memory on examination, *id.* (citing AR 401, 448, 513, 548, 701, 982, 1073).

14  The ALJ also found that Dr. Losee's 2020 finding of unimpaired memory and concentration on

15  examination, except for some difficulty with math-related tasks, supported Plaintiff's ability to

16  understand, remember, and carry out simple and detailed tasks, without significant impairment in

17  concentration, persistence, or pace.  AR 31.  The ALJ, in so doing, properly assessed, explained,

18  and provided substantial evidence support for his rejection of portions of Dr. Losee's opinions

19  with respect to supportability and consistency.  *See generally Woods*, 32 F.4th at 792-93;

20  *Thomas*, 278 F.3d at 954.  *See also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ who

21  found physician's description of a claimant's "'limited'" or "'fair'" abilities not useful in failing

22

23

1    to specify functional limits, "could reasonably conclude these characterizations were inadequate

2    for determining RFC.")[4]

3         The ALJ's decision is not, moreover, reasonably read to reflect a failure to consider Dr.

4    Losee's opinion that Plaintiff is "cognitively capable of adapting to changes in a work setting but

5    would have difficulty tolerating the stress of work[.]"  AR 514, 703.  The ALJ acknowledged

6    both this and Dr. Losee's subsequent opinion regarding social anxiety, and found the bulk of this

7    opinion evidence persuasive, while disagreeing as to the degree of Plaintiff's limitations.  AR 31.

8    The ALJ also earlier noted that, while Plaintiff testified she would find a simple job

9    overwhelming, she had only tried one job, worked for less than a month, had given different

10    reports as to why she left that job, and had otherwise demonstrated her ability to adapt despite

11    her limitations.  AR 29 (noting plaintiff reported she had been nervous with customers and feared

12    she would be yelled at if not fast enough, but had earlier reported she quit "because it had been 'a

13    really toxic situation.'") (citing AR 359, 512).  The ALJ also assessed Plaintiff as limited to

14    detailed, but not complex tasks, limited her interactions with others, and precluded her from

15    working as a part of a team.  The ALJ, for this reason and for the reasons discussed above, did

16    not err in considering the opinions of Dr. Losee.

17           2.    <u>Drs. William Wilkinson and Renee Eisenhauer</u>:

18         In a November 25, 2020 telephonic psychological evaluation, Dr. Wilkinson diagnosed

19    Plaintiff with PTSD, general anxiety disorder, major depressive disorder, recurrent, moderate,

20

21        [4] The Court also notes Plaintiff's acknowledgement that, while finding Plaintiff capable of performing detailed but not complex tasks, the jobs identified by the ALJ at step five involve only a General Educational Development (GED) Reasoning Level of 2.  *See* Dkt. 12 at 18 (citations omitted).

22    As the Commissioner observes, courts have found positions requiring a Reasoning Level of 2 consistent with simple work.  *See, e.g., Davis v. Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) (citing *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (holding that an RFC limited to "simple, routine, or

23    repetitive work" does not conflict with the ability to perform Reasoning Level 2 positions)); *Cervantes v. O'Malley*, C22-1565, 2024 WL 1173827, at *4-5 (E.D. Cal. Mar. 19, 2024).

1   psychogenic conversion disorder/non-epileptic seizure disorder by history, reading, writing,

2   mathematic learning disorders by history, and rule out personality disorder (of a Cluster C,

3   ACOA, and BPD features)."  AR 534.  Dr. Wilkinson assessed, *inter alia*, moderate limitations

4   in understanding, remembering, and persisting in tasks by following detailed instructions,

5   learning new tasks, performing routine tasks, being aware of hazards and taking special

6   precautions, communicating and performing effectively in a work setting, and setting realistic

7   goals and planning independently; marked limitations in performing activities within a schedule,

8   maintaining regular attendance, and being punctual, adapting to changes, maintaining

9   appropriate behavior in a work setting, and completing a normal workday and week; and an

10  overall severity level of marked.  AR 535.  In a December 30, 2020 review of medical evidence,

11  Dr. Eisenhauer agreed with this assessment.  AR 516-18.

12          The ALJ found the assessment of moderate and marked limitations and the overall

13  marked severity rating generally unpersuasive because they were not supported by Dr.

14  Wilkinson's own findings and were inconsistent with the record as a whole.  AR 32.  For

15  example, Dr. Wilkinson assessed a marked limitation in Plaintiff's ability to maintain appropriate

16  behavior in a work setting, but did not indicate any inappropriate behavior during the evaluation

17  and Plaintiff did not describe any such behavior.  *Id*.  Further, the record as a whole did not

18  establish inappropriate behavior, Plaintiff was regularly described as cooperative or pleasant, and

19  no clinicians reported inappropriate behavior.  *Id*.  The ALJ also found the assessment of a

20  moderate limitation in relation to detailed instructions inconsistent with the record as a whole,

21  observing Plaintiff showed no impairment in memory functioning on clinical exams with Dr.

22  Losee and successfully completed the same concentration tasks with Dr. Losee that she was

23  unable to perform for Dr. Wilkinson two months later.  *Id*. (citing AR 513, 536).

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9

1    Plaintiff argues the ALJ unreasonably disregarded Dr. Wilkinson's use of the phrase

2    "inappropriate behavior" as a reference to her psychogenic seizures, during which she was not

3    aware of or in control of her movements for several minutes at time.  Plaintiff also asserts that

4    Dr. Losee's finding of a severe impairment in her working memory skills and processing speed

5    supports a finding of an adverse impact on her ability to follow detailed instructions.  Plaintiff

6    further asserts the ALJ's failure to provide any specific reasons for rejecting Dr. Wilkinson's

7    other opinions of her marked limitations.  Plaintiff argues that the ALJ, for these same reasons,

8    also erred in rejecting the concurring opinion of Dr. Eisenhauer.

9    Plaintiff does not demonstrate reversible error.  First, Plaintiff fails to identify and the

10   Court does not find any support for her assertion that Dr. Wilkinson based his opinion as to

11   "inappropriate behavior" on Plaintiff's psychogenic seizures.  *See* AR 533-39.  The ALJ

12   reasonably found this opinion unsupported by Dr. Wilkinson's own findings and inconsistent

13   with the record as a whole, and his interpretation of the evidence is at least equally rational to the

14   alternative interpretation offered by Plaintiff.  Second, for the same reasons discussed above, the

15   ALJ's consideration of the opinion relating to detailed instructions has the support of substantial

16   evidence.  Third, in response to the Commissioner's argument that the ALJ is not required to

17   "perform a line-by-line exegesis[]" of each of the limitations assessed by a physician, *see*

18   *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to

19   perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft

20   dissertations when denying benefits."), Plaintiff asserts that she is arguing only that the ALJ

21   "should have addressed a limitation that went to the heart of this case – [her] ability to sustain

22   full time work."  Dkt. 15 at 5.  Plaintiff does not, however, undermine the substantial evidence

23   support for the ALJ's consideration of the opinion evidence from Drs. Wilkinson and

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 10

1   Eisenhauer.  Because the ALJ's consideration of this evidence is rational and supported by

2   substantial evidence, the Court finds no error.

3             3.     <u>Dr. Valerie Armstrong</u>:

4           Dr. Armstrong completed a Seizures Medical Source Statement dated January 25, 2023

5   indicating she had been treating Plaintiff since March 2020.  AR 1072.  Dr. Armstrong stated

6   Plaintiff had an average of one psychogenic, non-epileptic seizure per week, with alteration of

7   awareness, but no loss of consciousness, and postictal phenomena including muscle strain and

8   exhaustion.  *Id*.  Dr. Armstrong opined that, although stress could precipitate the seizures,

9   Plaintiff was capable of "moderate stress-normal work", and that, other than time away from

10  work for seizures and postictal phenomena, she did not need to take unscheduled breaks.  AR

11  1073.  Dr. Armstrong identified other mental problems as including depression, PTSD, anxiety,

12  and obsessive compulsive disorder (OCD), indicated Plaintiff was likely to have "good" and

13  "bad" days, and that she was likely to be absent about two or three days per month.  *Id*.  Dr.

14  Armstrong also opined that Plaintiff met a listing for dyscognitive seizures, and described other

15  limitations affecting her ability to work as including persistent motor tics, panic attacks, and

16  postural orthostatic tachycardia syndrome (POTS).  AR 1073-74.

17          The ALJ found Dr. Armstrong's opinion largely persuasive, pointing to the observation

18  that Plaintiff experienced one seizure per week and the opinion she was capable of moderate

19  stress/normal work.  AR 33.  However, the ALJ found the opinion that Plaintiff would miss two-

20  to-three workdays per month unpersuasive, finding no support for this opinion in the report itself,

21  in Dr. Armstrong's treatment notes, *see* AR 831-59, or in the record as a whole.  AR 33.  The

22  ALJ also found internal inconsistency between the opinion Plaintiff would have one seizure per

23  week but would miss only two-to-three days of work per month, reasoning that this shows her

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 11

1   seizures would not be the reason she would miss so much work, and pointed to Dr. Armstrong's

2   opinion that Plaintiff could handle the stress of "'normal work.'"  *Id.*  The ALJ, finally, stated

3   that the form completed by Dr. Armstrong erroneously asked for an opinion with regard to

4   Listing 11.02, which is related to neurologic listings, and did not opine as to the mental disorder

5   listings applicable to psychogenic seizures.  *Id.*

6        Plaintiff argues Dr. Armstrong's opinion regarding absences was supported by her report

7   and its indication of Plaintiff's mental impairments, including seizures once per week on

8   average.  She rejects the contention that Dr. Armstrong's failure to address work absences in

9   treatment notes served as a reason to reject the opinion, noting the Ninth Circuit's recognition

10  that "[t]he primary function of medical records is to promote communication and recordkeeping

11  for health care personnel – not to provide evidence for disability determinations."  *Orn v. Astrue*,

12  495 F.3d 625, 634 (9th Cir. 2007).  She asserts that the treatment notes nonetheless document her

13  psychogenic seizures and other mental health issues supporting Dr. Armstrong's opinion.

14  Plaintiff also asserts that Dr. Armstrong offered a conservative opinion about missing work,

15  likely because some of her seizures and panic attacks might occur outside of work hours, and

16  denies that the difference between four seizures and two-to-three absences per month reasonably

17  rises to the level of an inconsistency warranting rejection of the opinion.

18       The Court finds no error.  The ALJ appropriately considered the supportability of Dr.

19  Armstrong's opinion and reasonably concluded that neither the report itself, Dr. Armstrong's

20  treatment records, nor the record as a whole supported the opinion as to the likely number of

21  absences per month.  *Cf. Orn*, 495 F.3d at 634 (finding that, when viewed in its entirety, the

22  record provided ample support for physicians' opinions, including numerous reports from health

23  care providers and the results of medical tests and laboratory findings supporting questionnaires

they completed).  *See also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (the more relevant

evidence and supporting explanations provided by a medical source, "the more persuasive the

medical opinions . . . will be.")  The ALJ is, moreover, "'responsible for determining credibility,

resolving conflicts in medical testimony, and for resolving ambiguities.'"  *Ford*, 950 F.3d at

1149 (quoting *Andrews*, 53 F.3d at 1039).  Plaintiff here offers a different interpretation of Dr.

Armstrong's opinions.  She does not demonstrate that the ALJ's interpretation was not rational

or otherwise identify reversible error in the ALJ's consideration of this evidence.

4.    <u>Nathan Todd, LMHCA</u>:

Nathan Todd completed a Mental Source Statement dated February 1, 2023.  Todd found

Plaintiff, *inter alia*, moderately limited in the ability to understand detailed instructions, perform

activities in a schedule, maintain attendance, and be punctual, sustain an ordinary routine without

special supervision, and respond appropriately to changes in the work setting; markedly limited

in her ability to maintain concentration for extended periods, interact appropriately with the

general public, set realistic goals or make plans independently of others; and severely limited in

her ability to complete a normal workday and week and perform at a consistent pace without an

unreasonable number and length of rest periods, or to travel in unfamiliar places and use public

transportation. AR 1067-68.  In addressing the "'B'" criteria of the mental listings, Todd

assessed mild difficulties in understanding, remembering, and applying information and in

interacting with others, moderate difficulties in maintaining concentration, persistence, or pace,

and marked difficulties in adapting or managing oneself.  AR 1069.  Todd also found Plaintiff

would be off-task over thirty percent of the time during a forty-hour work week and would miss

four or more days per month.  *Id*.  Todd stated that Plaintiff presented with "functional

neurological symptom disorder which suggests an ongoing difficulty in carrying out routine tasks

1   due to the risk of seizures[,]" and that "increases in stress exacerbate symptoms and are likely to

2   trigger in new and changing environments."  AR 1070.

3          The ALJ found the form completed by Todd unpersuasive.  AR 32.  He found the ratings

4   internally inconsistent, insufficiently supported, and inconsistent with the record as a whole.  *Id*.

5   He identified an example of inconsistency in the assessment of a moderate limitation in the

6   ability to understand and remember detailed instructions, but only a mild limitation in the ability

7   to carry out detailed instructions, and only a mild rating in the domain of understanding,

8   remembering, and applying information.  *Id*. (citing AR 1067, 1069).  He found inadequate

9   support for the significantly restrictive limitations assessed, pointing to Todd's explanation that

10  Plaintiff's functional neurological symptom disorder, or conversion disorder, "'suggests'" an

11  ongoing difficulty carrying out routine tasks due to the risks of seizures, while Todd assessed

12  only a mild limitation in carrying out detailed tasks.  *Id*. (quoting AR 1070).  He also found

13  insufficient the explanation for the observation that increases in stress exacerbated Plaintiff's

14  symptoms, without a listing of such symptoms.  *Id*. (quoting AR 1070).  The ALJ noted Todd's

15  status as a mental health counselor and intern during Plaintiff's treatment, and the fact that Todd

16  failed to state that the ratings on the form were those of a treatment team and indicated Plaintiff

17  was not treated by a team.  *Id*. (citing AR 984, 1069).  The ALJ acknowledged Plaintiff's

18  seizures had been found to have a psychological and not mental basis, and found it significant

19  that Todd did not note other mental health diagnoses or symptoms Plaintiff reported, such as

20  social anxiety, panic attacks, or depression.  *Id*.  The ALJ, finally, noted that even Todd, whose

21  opinion the ALJ found extreme in other respects, opined that Plaintiff had no more than mild

22  limitations in her ability to accept instructions, respond appropriately to criticism from

23

1   supervisors, and get along with co-workers/peers without distracting them or exhibiting behavior

2   extremes.  *Id*. (citing AR 1068).

3          Plaintiff denies any internal inconsistency between a moderate limitation in

4   understanding and remembering detailed instructions and a mild limitation in either carrying out

5   detailed instructions or in understanding, remembering, and applying information.[5]  Plaintiff

6   states that Todd believed she could mechanically carry out detailed tasks, but had significant

7   difficulties with attention and concentration that would make it difficult for her to understand and

8   remember how to do so in a way that would allow her to perform the tasks independently, which

9   is why he opined she would need special supervision.  Regarding the alleged insufficient

10  explanation of the opinion regarding stress, Plaintiff states that psychogenic seizures are a

11  physical manifestation of psychological distress, and that Todd reasonably opined working

12  would exacerbate her seizures since she was having them once a week on average, with few

13  stressors in her life.  Plaintiff further states that, as a licensed healthcare worker working within

14  the scope of practice permitted by law, Todd was a medical source whose opinion the ALJ was

15  required to evaluate, 20 C.F.R. §§ 404.1502(d), 416.902(d), and that he was not required to be a

16  part of a treatment team.  Plaintiff adds that the form completed by Todd did not ask him to list

17  her other limitations, and states that his reference to functional neurological symptom disorder

18  suggests either that he considered this to be her primary disorder or included her other mental

19  impairments as part of the symptom disorder, and that neither interpretation undermines his

20  opinion.

21

22  _____

23          [5] Plaintiff clarifies that she does not challenge the ALJ's consideration of Todd's opinion as to traveling to unfamiliar places, using public transportation, interacting with the general public, setting realistic goals, or making plans independently with others, as the occupations identified by the ALJ at step five did not require these abilities.

1    Plaintiff offers her own explanations for the portions of Todd's opinion that the ALJ

2    found inconsistent, inadequately supported, and lacking sufficient explanation.  She does not

3    identify support for those explanations in Todd's opinion.  The ALJ properly discounted some of

4    this opinion evidence upon finding it inadequately supported and inconsistent, *see* 20 C.F.R. §§

5    404.1520c(c)(1), 416.920c(c)(1), and his interpretation has the support of substantial evidence.

6    Nor does Plaintiff identify error in the ALJ's observation as to Todd's education and status at the

7    time he offered his opinion, *see* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4) (ALJ may

8    consider specialization of medical source), or the fact that Todd stated Plaintiff was not being

9    treated as a part of a treatment team, *see* AR 984, 1069.  The ALJ also, in considering Todd's

10   failure to note Plaintiff's other mental health diagnoses or reported symptoms, properly

11   considered the degree to which this provider was familiar with other evidence in the record.  *See*

12   20 C.F.R. §§ 404.1520c(c)(2), (5), 416.920c(c)(2), (5) (ALJ considers consistency with evidence

13   from other medical and nonmedical sources, as well as other factors, including "evidence

14   showing a medical source has familiarity with other evidence in the claim[.]")  For this reason

15   and for the reasons stated above, Plaintiff fails to demonstrate error in the ALJ's consideration of

16   Todd's opinion.

17            5.    Drs. Gary L. Nelson and Carol Mohney:

18            The ALJ also considered the prior administrative findings of State agency psychological

19   consultants Drs. Nelson and Mohney, offered in October 2020 and January 2022 respectively.

20   Dr. Nelson found Plaintiff could complete simple, repetitive tasks, carry out simple, one-to-three

21   step instructions, maintain concentration, persistence, and pace for up to two hours continuously,

22   maintain adequate attendance, complete a normal workday/week within normal tolerances of a

23   competitive workplace, and adapt within a reasonable time frame, and limited her to no general

public contact, and only superficial contact with supervisors and coworkers.  AR 84-96, 98-100.
Dr. Mohney opined similarly, *see* AR 118-22, 139-43, specifically finding that Plaintiff could
carry out only simple, one-and-two step instructions, and "make decisions, attend and
concentrate for extended periods, with only superficial contact with the public and supervision is
simple, direct and concrete."  AR 121.

The ALJ found these opinions generally unpersuasive, stating that, while they provided
some support for their findings, the record as a whole contained insufficient evidence to support
the actual limitations assessed.  AR 29.  There was, for example, insufficient evidence Plaintiff
would be limited to simple, one- to three-step instructions given the consistent findings of her
normal or intact memory on clinical exam, and the absence of any limitations in understanding or
applying instructions reported by her evaluating and treating clinicians.  AR 29-30 (citing AR
401, 448, 513, 548, 701, 982, 1073).  The ALJ also pointed to Plaintiff's reported engagement in
a number of different hobbies, such as video games, "diamond painting," and model building,
and found insufficient evidence to support her assertion she could only do so for short periods of
time due to pain and frustration/discouragement.  AR 30.

With respect to social functioning, the ALJ noted Plaintiffs' report she found it very
difficult to talk to people she did not know, had a panic attack at a concert after being involved in
a minor car accident, and her failed attempt to work and associated inconsistent reporting, and
found she "demonstrated greater social tolerances throughout the record."  *Id*.  The ALJ pointed
to the record as showing Plaintiff met her boyfriend for the first time at a bar, after meeting
online through an app, played video games for hours with others online, attended a concert with
her boyfriend, went out to dinner, went shopping at a mall for two hours during the December
holiday season, hung out with her boyfriend at the mall, went to an arcade, and was

1    contemplating attending Black Friday sales and a busy Thanksgiving, later reporting "she had

2    managed everything well." *Id*. (citing AR 645, 700, 953, 1046, 1050).

3           The ALJ agreed with the consultants' opinion that Plaintiff could adapt within a

4    reasonable timeframe, and found inconsistency between an assessed moderate limitation in the

5    "B criteria" and the assessed RFC functioning. *Id*.  The ALJ stated that, although Plaintiff

6    clearly viewed herself as significantly limited in both her physical and mental health functioning,

7    she had "nevertheless adapted" and shown the ability to go out in public, engage in hobbies,

8    attend to household chores, and meet friends online through apps.  *Id*.

9           Plaintiff argues the ALJ erred in giving greater weight to brief mental status examination

10   findings than to cognitive testing showing significant deficits in working memory and processing

11   speed, and, in so doing, improperly substituted his own opinion for that of a physician.  She also

12   argues that, without more information as to how she performed them, the ALJ unreasonably

13   found her reported activities undermined the assessed limitation to simple one-to-two-step tasks.

14   Plaintiff further asserts that the ALJ did not explain why he apparently accepted other aspects of

15   the opinions.  She states that the opinion she could sustain full-time work was inconsistent with

16   those of examining and treating medical sources rendered after the consultants' review of the

17   record, as well as later-dated treatment notes.

18          The Court finds no error.  The ALJ, in finding some of the consultants' opinions

19   unpersuasive, properly considered the medical evidence of record as a whole, and rationally

20   interpreted that evidence to show an absence of support for the degree of limitation assessed and

21   inconsistency with evidence in the record.  As recognized by the Ninth Circuit, ALJs are capable

22   of independently reviewing and drawing conclusions from medical evidence in order to fulfill

23   their statutory duty of determining whether a claimant is disabled. *Farlow v. Kijakazi*, 53 F.4th

1   485, 488 (9th Cir. 2022).  The ALJ also reasonably considered evidence of Plaintiff's activities.

2   The ALJ recounted specific hobbies and activities represented in the record, and found

3   insufficient evidence to support Plaintiff's assertion that she could only engage in those activities

4   for short periods of time.  The ALJ provided multiple examples of Plaintiffs' engagement in

5   activities and rationally construed the record to show she demonstrated greater social tolerances

6   than alleged.  The ALJ, finally, did not err in accepting other aspects of the consultants' opinions

7   instead of those later offered by other medical sources.  The ALJ instead appropriately resolved

8   conflicts in the medical evidence and offered conclusions that are both rational and supported by

9   substantial evidence.  *See Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) ("[T]here is

10  always some time lapse between a consultant's report and the ALJ hearing and decision, and the

11  Social Security regulations impose no limit on such a gap in time.")

12          **B.      The ALJ Did Not Err in Evaluating Lay Testimony**

13          The ALJ found that the testimony of Plaintiff's mother, P.B., did not support greater

14  limitations than those assessed in the RFC.  AR 33.  He stated that, for example, while P.B.

15  asserted Plaintiff's seizures "'have her on the ground shaking[,]'" the witnessed seizures and tics

16  in the record did not involve falling to the ground or shaking.  *Id*. (citing AR 273, 566 (physician

17  witness to seizure stated:  "limbs were not particularly stiff and were not moving")).  He also

18  noted P.B.'s statement that Plaintiff was unable to use her hand(s) when having the seizures, *see*

19  AR 566, "[b]ut the seizures last a matter of minutes, per the record, and the claimant does not

20  experience confusion or other typical postictal symptoms afterwards."  AR 33 (citing AR 566

21  (physician witnessed seizure lasted three minutes and, afterwards, Plaintiff was coherent, fluent,

22  and well oriented)).  However, noting that P.B. asserted Plaintiff was unable to do many tasks,

23

1   such as cook, due to the risk of having a seizure, the ALJ agreed that seizure precautions in the

2   workplace were warranted.  *Id*. (citing AR 273-80).

3         Plaintiff argues error in the ALJ's failure to provide specific, germane reasons for

4   rejecting the lay testimony.  *See Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006).

5   She asserts that P.B. did not state all of her seizures involved shaking on the ground and that the

6   treatment note cited by the ALJ did not contradict P.B.'s statement that she could not perform

7   most physical activities during the seizures.  She asserts that the RFC seizure precautions do not

8   address limitations caused by unpredictable seizures during which she cannot function at all for

9   several minutes, or her need for a break to recover or be off task during the postictal phase.

10        The Commissioner argues that the applicable regulations do not require that an ALJ

11  provide germane reasons for rejecting non-medical evidence.  *See* 20 C.F.R. §§ 404.1520c(d),

12  416.920c(d) ("We are not required to articulate how we considered evidence from nonmedical

13  sources[.]")  The Commissioner further argues that, even if the Court were to disagree with that

14  contention, the ALJ provided germane reasons to discount the lay testimony.

15        Whatever the proper standard to apply,[6] it remains that the ALJ here identified

16  inconsistencies between the lay testimony and evidence in the medical record in concluding that

17

18  _____

19  [6] The Ninth Circuit has not yet clarified whether an ALJ is still required to provide germane
    reasons for discounting lay witness testimony.  *See Stephens v. Kijakazi*, No. 22-35998, 2023 WL
20  6937296, at *2 (9th Cir. Oct. 20, 2023).  *See also Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992,
    at *2 (9th Cir. Jan. 23, 2024) (acknowledging new regulations, but finding any error in failure to articulate
    how the evidence was considered harmless).  Without that clarification, this Court continues to find no
21  basis for the Commissioner's assertion that an ALJ need not articulate why the ALJ rejected relevant lay
    witness evidence.  *See, e.g.*, *Mark C. J. v. Comm'r of Soc. Sec.*, C24-5252-DWC, 2024 WL 4182576, at
22  *4 (W.D. Wash. Sept. 13, 2024) (noting unsettled nature of Ninth Circuit law, as well as other relevant
    regulations indicating ALJs will consider evidence from nonmedical sources when evaluating a claim of
    disability, and applying "germane" reasons standard in absence of guidance from Ninth Circuit).  *See also*
23  *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (an ALJ may not reject
    "significant probative evidence" without explanation).

the lay testimony did not support greater limitations than those included in the RFC.  The ALJ, in so doing, identified a germane reason for rejecting the lay testimony.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may reject lay testimony upon finding it inconsistent with the medical record).  Plaintiff disagrees with, but does not demonstrate that the ALJ's interpretation of the evidence was not rational or that it lacks the support of substantial evidence. The Court, as such, finds no error in the ALJ's consideration of the lay testimony.[7]

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 25th day of September, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

---

[7] While Plaintiff also contends that the ALJ's error in the evaluation of medical source opinions and lay witness testimony led to errors in the RFC assessment and finding at step five, these derivative allegations need not be separately addressed.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 21